## 46391. WINDERS v. THE STATE.
(375 SE2d 862)

MARSHALL, Chief Justice.

Steven Shane Winders was indicted for the murder of Allen W. Smith, possession of a firearm during the commission of a crime, forgery, burglary, and two counts of theft by taking. He was tried and found guilty of burglary and theft by taking, and was sentenced to five years' imprisonment on each count. As a result of a deadlocked jury on the remaining charges, Winders was retried, and in the second trial, was found guilty of murder and possession of a firearm during the commission of a crime. He was sentenced to life imprisonment plus five years' imprisonment, consecutively.[1] We affirm.

The evidence authorized the following findings. The victim, Smith, was in his early sixties and lived alone in Moultrie. Frequently, Smith invited several teenage and older boys to "hang out" at his place, serving them alcoholic beverages and allowing them to spend the night. Three young boys — John Miller, Chris Farmer, and Shannon Wise — occasionally borrowed Smith's 1987 Chevrolet Spectrum automobile, sometimes against his wishes. The boys occasionally became rowdy and abusive.

At approximately 8:00 p.m. on Friday, August 7, 1987, Smith al-

---

[1] The crimes were committed on August 10, 1987. Winders was convicted on August 18, 1988, and sentenced on August 19, 1988. His notice of appeal was filed on September 7, 1988. The transcript was filed on October 28, 1988. The record was docketed in this Court on November 14, 1988. The case was submitted for decision on December 30, 1988.

lowed Chris Farmer and John Miller to use his car to go to the store for cigarettes; however, the boys met Winders and drove around until 4:00 a.m. When they returned, Smith told the boys that he had reported the car stolen. The boys spent the night at Smith's house. They drank, watched television, and tried on Smith's suits. Smith showed them a .22 caliber pistol, which he kept in the nightstand next to his bed, and a .22 caliber rifle. The boys started to take Smith's car again, but he stopped them and locked them out of the house. The boys got back into the house through a window and sat in the living room for a short while. Finally, Farmer and Miller went out on the porch to sleep, and Winders went home. When Winders left, he was wearing Miller's pants, which he had put on when they were exchanging clothes. Smith's car key was still in the pants pocket. When Farmer and Miller realized that Winders had the car key, they unsuccessfully attempted to find his house.

At approximately 6:30 p.m. on Sunday, August 9, 1987, Winders returned to Smith's house for approximately 40 minutes. Walking home, Winders met his friends, Andy Crosby and Michael Lee Smith (no relation to the victim), and told them that he had a 1987 Spectrum. Around 8:30 p.m., Crosby and Lee Smith gave Winders a ride to a store near his house and agreed to meet him back there at 9:30 p.m. Winders then walked back to Mr. Smith's house to "borrow" his car, using the key he had kept from Friday night. It is unknown how long he stayed at the house.

When Winders met Crosby and Lee Smith at the store shortly after 9:30 p.m., he was driving the victim's car and had the victim's .22 caliber pistol. The boys drove around from then until 4:00 a.m. While cruising, they found a blank check in the glove compartment and attempted to cash it by making it payable to the victim and signing the victim's name.

Shortly before 4:00 a.m., Winders ran into a curb and flattened a front tire. Since they did not have a trunk key, the boys walked to Lee Smith's car and drove to the victim's house to get the key. Winders climbed in the front window of the dark house while Crosby and Lee Smith stood on the front porch. When Winders turned on the lights, Crosby and Lee Smith saw the victim lying on the bed with his leg hanging over. Crosby commented that Smith looked dead; Winders responded that he might be. Winders went through the victim's pants pockets and found the trunk key. Winders told his friends that he knew the victim well, although he had met the victim only two days earlier. The boys discovered that there was no spare tire in the trunk, so Winders went home at 6:00 a.m., and Crosby and Lee Smith went to a store to cash the forged check. They left the victim's car stranded in a parking lot.

At approximately 7:00 a.m., a Moultrie police officer drove by the

store and found Crosby and Lee Smith sitting in front. Upon questioning, the boys stated that they had been riding around all night with Winders and were waiting to cash a check. The boys told the police where they had left the car. Police went to the victim's house to check whether the car was stolen, and found him dead, lying on the bed in the same position as Crosby and Lee Smith had seen him at 4:00 a.m. The victim's .22 caliber pistol was missing from the open nightstand drawer. A bloodied knife was found under the living-room sofa, and three .22 caliber casings were found in the living room and dining room.

There was testimony that the victim died as a result of a gunshot wound to the chest. Stab wounds on the body were consistent with the knife found under the sofa. Abrasions were found on the victim's face, forehead and knees, and bruises were on the hands and palms.

Winders was arrested on Monday, August 10, after which he made taped statements to police. His statement regarding Friday, August 7, concurred with statements made by Miller and Farmer. He admitted that on Sunday, August 9, he went to the victim's house twice, at 6:30 and 8:30 p.m., to borrow the victim's car. He stated that he used the car key he had gotten from Miller and drove around with Crosby and Lee Smith until 4:00 a.m., when they returned to the victim's house to search for the trunk key. He stated that he told his friends that he had the victim's gun. Initially, he told police that he did not have the victim's pistol, but later he stated that he got it when he returned at 4:00 a.m. He stated that the victim was already dead at that time.

Winders' stepfather testified that he found the victim's .22 caliber pistol on a table at his house early in the morning of Monday, August 10, 1987. He took the weapon to work that morning and sold it to a man, from whom the police recovered it. On that same day, the stepfather tried to sell two rings, one of which belonged to the victim, to a pawnshop, which bought them the next day.

Winders' mother testified that on Sunday, August 9, Winders left home then returned at 9:30 p.m., driving the victim's car, and that he had ridden in the same car with Farmer and Miller that previous Friday night.

A state crime laboratory microanalyst testified that: fingerprints of Winders, Crosby and Lee Smith were found on the victim's car; the bullet recovered from the victim was consistent with the .22 caliber revolver; and the gunpowder residue found on the victim's tee-shirt indicated a muzzle-to-target distance of less than two feet. The victim was lying down when shot, and hand and facial injuries indicated a struggle before death.

To warrant a conviction on circumstantial evidence, the circumstantial evidence must exclude only reasonable inferences and hy-

potheses, and it is not necessary that such evidence be devoid of *every* inference or hypothesis except that of the defendant's guilt; the question of whether there was a reasonable hypothesis favorable to the accused is a question for the jury. *White v. State,* 253 Ga. 106 (1) (317 SE2d 196) (1984) and cits. Summarizing the evidence, the jury was authorized to find that: Winders, who barely knew the victim, claimed that the victim loaned him his car on Sunday evening, yet also claimed that he had to break into the victim's house during the early morning hours to obtain a trunk key to replace a flat tire; while inside the victim's house, Winders went through the victim's pockets and found the trunk key; when leaving, in response to a comment from one of his companions, he acknowledged that the victim might be dead; after Winders had been introduced to the victim, he later went back to the victim's house, killed the victim, and took the victim's car; when he caused a flat tire on the vehicle, he realized that he did not have a trunk key and, knowing that the victim was deceased, went back to the victim's home and entered through the window; once inside, he felt free to look for the missing key in spite of his knowledge that the victim kept a pistol next to his bed, because the victim, who was at that time deceased, would not disturb his search.

The evidence was sufficient to meet the standard of *Jackson v. Virginia,* 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 15, 1989.

*G. Keith Murphy,* for appellant.

*H. Lamar Cole, District Attorney, Charles M. Stines, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.